**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2057-24

IN THE MATTER OF ELWOOD
BELL'S APPLICATION FOR A
FIREARMS PURCHASER
IDENTIFICATION CARD.

_____

Argued January 22, 2026 – Decided April 7, 2026

Before Judges Currier and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. GPA-12-24.

Christopher S. Lipari argued the cause for appellant Elwood Bell (Lipari & Deiter, PC, attorneys; Christopher S. Lipari, on the briefs).

Matthew T. Mills, Assistant Prosecutor, argued the cause for respondent State of New Jersey (William Reynolds, Atlantic County Prosecutor, attorney; Matthew T. Mills, of counsel and the brief).

PER CURIAM

This appeal arises out of the trial court's February 4, 2025 order denying appellant's application for a Firearms Purchaser Identification Card (FPIC) and permit to purchase a handgun. The trial court found that based on the totality of

appellant's history, approval of the application would not be in the interest of public health, safety, or welfare under N.J.S.A. 2C:58-3(c)(5). We affirm.

After appellant applied for a FPIC and permit to purchase a handgun with the Absecon Police Department, the Department commenced its investigation, conducting background and criminal history checks, which uncovered the issuance of nine temporary restraining orders (TRO) involving appellant. Police Chief James R. Laughlin, Jr., denied appellant's application, citing the public safety and welfare exception as well as appellant's extensive domestic violence/weapons seizure history.

Appellant appealed and the court held a hearing during which Chief Laughlin, appellant, and his long-term girlfriend of fourteen years, Y.D.,[1] testified.

Appellant currently resides in Absecon with his mother, his daughter, Y.D., and Y.D.'s daughter. He works as a tractor-trailer driver of a gasoline truck delivering fuel. According to appellant, to obtain his employment, he underwent an extensive federal background check and obtained a Transportation

---

[1] We use initials because names of victims or alleged victims of domestic violence are excluded from public access under Rule 1:38-3(c)(12).

A-2057-24

Worker Identification Credential card issued through the Department of Homeland Security, which is valid through 2026.

Appellant testified he was first issued a FPIC in Atlantic City in 1992. In 1996, appellant was stopped for speeding after leaving a gun range. He had a handgun locked in his trunk and bullets in the glove compartment. Appellant was charged with third-degree unlawful possession of a handgun under N.J.S.A. 2C:39-5(b) and was accepted into and completed pre-trial intervention.

Between 1997 and 2021, eight TROs were issued against appellant by five different victims. Appellant testified he was both a victim and a defendant in three of them. All of the TROs were subsequently dismissed.

In 2018, a TRO was issued against appellant and officers executed a domestic violence search warrant pursuant to N.J.S.A. 2C:25-21, seizing his firearms and a set of brass knuckles. During the hearing in this case, appellant asserted that the police did not seize the brass knuckles after he stated they were a "collector's item." Appellant stated that after the dismissal of each TRO (except in 2021), police returned his firearms to him.

In 2021, appellant applied for an FPIC at his new address in Absecon. However, after Y.D. obtained a TRO against appellant, and his weapons and

FPIC were subsequently seized, he withdrew the application.[2] The seized items included illegal extended capacity magazines. After the 2021 TRO was dismissed, defendant was advised his guns would be returned, but not the illegal extended capacity magazines. However, law enforcement then realized appellant had a new address and advised appellant he needed to apply for a FPIC and handgun permit in his current place of residence before the weapons could be returned to him. Appellant applied for an updated FPIC in 2024—the subject of this appeal.

The court issued an oral decision on February 4, 2025, following the hearing and then filed a supplemental written opinion on April 1, 2025.

In both decisions, the trial court found Chief Laughlin's testimony credible in explaining his reasons for the denial of appellant's application. The court also found appellant credible, although it questioned some of the testimony regarding the domestic violence incidents.

The court noted that appellant "admitted to knowingly possessing brass knuckles and extended magazine ammunition, possession of which is contrary

---

[2] This was the second TRO Y.D. had applied for and was granted against appellant.

to the New Jersey Criminal Code, even though he was not charged." In addition, appellant "further admitted to not fully understanding the New Jersey gun laws."

Regarding the domestic violence testimony, the court found there were nine entries in the Domestic Violence registry "with five . . . different women." The court noted appellant's testimony that he was the victim in several of the complaints and that he called police. The court acknowledged that "at least three . . . of the incidents were mutual, all for harassment, and there were no criminal complaints. However, this does not match up with the entries in the domestic violence registry."

As to Y.D.'s credibility, the court found her "testimony was . . . partially credible" but "diminished . . . [by] her contradictory answers on cross-examination." The court noted "[Y.D.] repeatedly admitted to facts and circumstances that she had first denied on direct examination." Y.D. initially testified that she did not recall incidents in which she reported to police that appellant threw a shoe at her and threatened to kick down a door. However, she later admitted she told the police these events had occurred.

After reviewing the applicable case law, the court stated:

> In the current case, the [c]ourt finds [that appellant's] prior conduct poses a threat to the public safety, health, and welfare pursuant to N.J.S.A. 2C:58-3(c)(5) . . . . [Appellant] has both a criminal history and a domestic

5

violence history. Upon review of this history, it seems . . . [appellant] has a penchant for resolving disputes with domestic violence as he has a history spanning from 1997 to 2021 with at least five different victims. There have also been at least five different TROs issued against him, albeit dismissed.

This history is not isolated or fleeting, nor is it based on youthful indiscretions. . . . [Appellant] has a propensity of domestic violence and has had his weapons lawfully seized from him at least twice due to these domestic violence incidents. Defense argues that in some of these instances . . . [appellant] was the victim of domestic violence. However, the [c]ourt still gives great weight to the fact that he was involved in a domestic violence situation. If . . . [appellant] were able to obtain [a] FPIC or [permit to purchase a handgun], it would create a risk to the safety of the public as well as similarly situated women.

Although the criminal charges were either dismissed or resolved via Pretrial Intervention, these factors are still something the [c]ourt can take into consideration when determining whether an [a]pplicant is fit to possess a firearm pursuant to Osworth[3]. The [c]ourt takes into account the severity of the 1996 unlawful possession of a handgun charge, as although it is remote, it is a violation of New Jersey gun laws. See N.J.S.A. 2C:39-5(b). Further, N.J.S.A. 2C:39-3 details prohibited weapons in New Jersey, where licensure to obtain is unavailable. . . . [Appellant] has also violated this statute by being in possession of metal knuckles in violation of N.J.S.A. 2C:39-3(e) and two high-capacity magazines, that were verified to hold fifteen (15) rounds each, in violation of N.J.S.A. 2C:39-

---

[3] In re Osworth, 365 N.J. Super. 72 (App. Div. 2003).

A-2057-24

3(f)(2). These repeated violations of weapons related offenses [are] troublesome to the [c]ourt.

[(Emphasis in original and citations reformatted).]

The court found appellant lacked "the essential character of temperament necessary to be entrusted with a firearm" under N.J.S.A. 2C:58-3(c). Because the court denied the application for an FPIC, it ordered the weapons not be returned to appellant.

On appeal, appellant contends the State did not support its burden of proof that he was a threat to the public safety, health and welfare, and that he had no notice that the State would seek disqualification under N.J.S.A. 2C:58-3(c)(8).

In reviewing a trial court's decision, "an appellate court should accept a trial court's findings of fact that are supported by substantial credible evidence." In re J.W.D., 149 N.J. 108, 116 (1997). Where the evidence is mostly testimonial and involves questions of credibility, deference to a trial court's findings of fact is particularly appropriate. Id. at 117. However, our review of the trial court's statutory interpretation is de novo. Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017).

We are satisfied the trial court supported its determination with sufficient credible evidence in the record and found the issuance of an FPIC and gun permit would not be in the interest of public health, safety or welfare under N.J.S.A.

7

2C:58-3(c)(5). Appellant has an extensive history of domestic violence spanning from the late 1990s up to 2021. These TROs involved five different victims. Although each TRO was subsequently dismissed, the court is permitted to take into account the existence of the complaints in deciding whether approving appellant's application for an FPIC would be a threat to the public health, safety, and welfare. See Osworth, 365 N.J. Super. at 78.

In addition, appellant has violated various provisions of the New Jersey Criminal Code in his possession of brass knuckles contrary to N.J.S.A. 2C:39-3(e) and extended magazine ammunition contrary to N.J.S.A. 2C:39-3(f)(2). Appellant's professed ignorance of the New Jersey gun laws is not a defense but instead adds to our concern regarding his fitness to possess firearms.

Based on the foregoing, the trial court correctly determined that appellant is a threat to the public health, safety, and welfare under N.J.S.A. 2C:58-3(c)(5) requiring a denial of the FPIC application and the order that his firearms not be returned to him.

In light of our determination, we need not address appellant's additional point. However, we agree it was improper for the court to rely on N.J.S.A. 2C:58-3(c)(8) as an alternative ground for denying the FPIC application because appellant's firearms were not withheld due to a forfeiture order. Rather they

were not returned after the dismissal of the 2021 TRO because he no longer possessed a valid FPIC.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2057-24